[Cite as *State v. Beverly*, 2013-Ohio-1365.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee          :          C.A. CASE NO.    2011 CA 64

v.                               :          T.C. NO.    11CR258A

JORDAN BEVERLY                   :          (Criminal appeal from
                                               Common Pleas Court)

    Defendant-Appellant         :

                                          :

. . . . . . . . . .

**O P I N I O N**

Rendered on the 5th day of April, 2013.

. . . . . . . . . .

LISA M. FANNIN, Atty. Reg. No. 0082337, Assistant Prosecuting Attorney, 50 E. Columbia Street, 4th Floor, P. O. Box 1608, Springfield, Ohio 45501
    Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Blvd., Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . .

FAIN, P.J.

{¶ 1}    Defendant-appellant Jordan Beverly appeals from his conviction and sentence for

one count of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), a

felony of the first degree; eight counts of Burglary, in violation of R.C. 2911.12(A)(3), all felonies of the third degree; five counts of Receiving Stolen Property, in violation of R.C. 2913.51, all felonies of the fourth degree; one count of Receiving Stolen Property, in violation of R.C. 2913.51, a felony of the fifth degree; one count of Attempted Burglary, in violation of R.C. 2923.02 and 2911.12(A)(1), a felony of the third degree; one count of Attempted Burglary, in violation of R.C. 2923.02 and 2911.12(A)(3), a felony of the fourth degree; two counts of Fleeing and Eluding, in violation of R.C. 2921.331(B), a felony of the third degree; and one count of Having Weapons While Under Disability, in violation of R.C. 2923.13, a felony of the third degree.

{¶ 2}    Beverly contends that the trial court erred in overruling his motion to suppress incriminating statements he made to police, because those statements were not knowing and voluntary.  He contends that the evidence in the record is insufficient to support his conviction for Engaging in a Pattern of Corrupt Activity, because there was insufficient proof of the existence of an enterprise.  Beverly also contends that his sentence of 66½ years constitutes an abuse of discretion.  Finally, Beverly contends that his convictions for Receiving Stolen Property and for Having Weapons While Under a Disability should have been merged.

{¶ 3}    We conclude that the trial court did not err when it overruled Beverly's motion to suppress, because the record establishes that his incriminating statements were made knowingly, intelligently, and voluntarily.  We agree with Beverly that there is insufficient evidence in this record to prove the enterprise element of Engaging in a Pattern of Corrupt Activity.  We agree with Beverly that his sentence of 66½ years constitutes an abuse of discretion.  We also agree with Beverly that the trial court erred when it failed to merge his convictions for Receiving

Stolen Property and for Having a Weapon While Under a Disability. Accordingly, Beverly's conviction and sentence for Engaging in a Pattern of Corrupt Activity is Reversed and Vacated; the sentence imposed by the trial court is Reversed; and this cause is Remanded for merger of the Receiving Stolen Property and Having a Weapon While Under a Disability convictions and for re-sentencing.

## I. The Course of Proceedings

{¶ 4} Beverly was originally indicted in February 2011. In April, Beverly was re-indicted in a 25-count indictment. Both indictments concerned a series of thefts and burglaries that occurred in and around Clark County, Ohio, in late 2010 and early 2011. It was alleged that Beverly committed most, if not all, of the offenses with his co-defendant, Brandon Imber.

{¶ 5} Beverly moved to suppress statements he made to police officers after he was arrested and taken into custody. After a hearing on the motion, the trial court overruled it.

{¶ 6} Beverly's jury trial lasted eight days. Beverly was convicted on one count of Engaging in a Pattern of Corrupt Activity; eight counts of Burglary; six counts of Receiving Stolen Property; two counts of Attempted Burglary; two counts of Fleeing and Eluding; and one count of Having Weapons While Under a Disability. The trial court merged the two counts of Fleeing and Eluding, and sentenced Beverly to an aggregate prison term of 66½ years.

{¶ 7} From his conviction and sentence, Beverly appeals.

## II. Beverly's Waiver of his *Miranda* Rights, and His
## Subsequent Statements, Were Knowing and Voluntary

{¶ 8} Beverly's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS.

{¶ 9} Beverly contends that the trial court erred when it overruled his motion to suppress statements he made to police during a custodial interrogation after he was arrested. Specifically, Beverly argues that the interviewing officer used physical threats and offers of leniency to coerce his statements. Accordingly, Beverly asserts that the waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was not knowing, intelligent, and voluntary.

{¶ 10} In deciding a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶ 11} The Fifth Amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment privilege against compulsory self-incrimination 'protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" *Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humbolt Cty.*, 542 U.S. 177, 124 S.Ct. 2451,

159 L.Ed.2d 292 (2004) (quoting *Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)); *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.E.2d 158 (2001). The Sixth Amendment to the United States Constitution provides that an individual has a right to the assistance of counsel for his defense in all criminal prosecutions. This right attaches only at the initiation of adversarial criminal proceedings. *United States v. Davis*, 512 U.S. 452, 456-57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446. Nevertheless, the United States Supreme Court has held that "a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins." *Davis*, 512 U.S. at 457, citing *Miranda v. Arizona*, *supra*.

{¶ 12} When a suspect waives his right to counsel after *Miranda* warnings have been given, law enforcement officers are free to question him. However, once a suspect requests counsel, the police must cease their interrogation until an attorney has been provided or the suspect himself reinitiates conversation. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Davis*, 512 U.S. at 458.

{¶ 13} Whether a suspect has invoked his right to counsel is an objective inquiry. *Id*. A request for an attorney must be clear and unambiguous, to the extent that a reasonable police officer in the circumstances would understand the statement to be an invocation of the right to counsel. *Davis*, 512 U.S. at 459; see *State v. Murphy*, 91 Ohio St.3d 516, 520, 2000-Ohio-112, 747 N.E.2d 765.

{¶ 14} Beverly was first interviewed by Detective James Hollopeter at about ten p.m. Throughout the brief interview, Beverly appeared lethargic and sluggish. At the beginning of

the interview, Detective Hollopeter informed Beverly of his *Miranda* rights. During Detective Hollopeter's recitation of his constitutional rights, Beverly unequivocally stated that he wanted to be represented by an attorney. At that point, Detective Hollopeter ended the interview. Although Beverly contends that Detective Hollopeter forced him to his feet and slammed him against the wall in the interview room, the audiovisual recording of the interview does not depict these actions. The recording does support Beverly's claim that Detective Hollopeter orally threatened him, saying "you [Beverly] are not going down for a couple of years. You're going down for a couple of decades." Beverly acknowledges that three days later, he asked to speak with Detective Hollopeter regarding his arrest, through a jail deputy, Matthew Kerns.

{¶ 15} At the second interview, three days later, Detective Hollopeter began by asking Beverly if he remembered invoking his right to counsel at the first interview. Beverly stated that he was "pretty messed up," and that he did not even remember speaking with Detective Hollopeter in the first interview or invoking his right to counsel. Beverly then informed Detective Hollopeter that he wanted to discuss his role in the crimes for which he was arrested and taken into custody. Detective Hollopeter read Beverly his *Miranda* rights. Detective Hollopeter then asked Beverly to read the rights waiver out loud, in order to make sure that he understood the contents of the form. Beverly indicated that he understood his rights. Detective Hollopeter also informed Beverly that he had just spoken with the prosecutor assigned to the case. According to Detective Hollopeter, the prosecutor stated that "life will be better" for whomever confesses first, be it Beverly or his co-defendant, Imber. Thereafter, Beverly waived his rights and made a number of incriminating statements regarding his role in the burglaries and thefts for which he was charged.

**{¶ 16}** A defendant's statement to police is voluntary absent evidence that his will was overborne and his capacity for self-determination was critically impaired due to coercive police conduct. *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *State v. Otte*, 74 Ohio St.3d 555, 562, 1996-Ohio-108, 660 N.E.2d 711. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), at paragraph two of the syllabus, overruled on other grounds, 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). *See also*, *State v. Brewer*, 48 Ohio St.3d 50, 58, 549 N.E.2d 491 (1990); *State v. Marks*, 2d Dist. Montgomery No. 19629, 2003-Ohio-4205. The State has the burden to show by a preponderance of the evidence that a defendant's confession was voluntarily given. *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978). A police officer's "[p]romises that a defendant's cooperation would be considered in the disposition of the case, or that a confession would be helpful, does not invalidate an otherwise legal confession." *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994), overruled on other grounds, citing *Edwards*, 49 Ohio St.2d at 40-41.

**{¶ 17}** Upon review, we conclude that Beverly's statements to Detective Hollopeter were not induced by unlawful promises of leniency that would render his statements involuntary. Although Detective Hollopeter told Beverly "life will be better," the detective did not promise Beverly that he would receive a more lenient sentence. Furthermore, Detective Hollopeter did not indicate to Beverly that he had any control over the sentence he would receive, if Beverly

cooperated. We conclude that Detective Hollopeter's statements to Beverly during both the first and second interviews did not render Beverly's confession involuntary. The record portrays a knowing and intelligent waiver of *Miranda* as well.

{¶ 18}   Beverly's First Assignment of Error is overruled.

### III.   The State Failed to Prove the "Enterprise" Element
### of Engaging in a Pattern of Corrupt Activity

{¶ 19}   Beverly's Second Assignment of Error is as follows:

THE JURY'S VERDICT AS TO COUNT I – ENGAGING IN A PATTERN OF CORRUPT ACTIVITY SHOULD BE REVERSED AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 20}   Beverly argues that his conviction for Engaging in a Pattern of Corrupt Activity is against the manifest weight of the evidence. Specifically, Beverly asserts that the State failed to prove the "enterprise" element of the offense, which requires that there be an ongoing organization, with associates, that functions as a continuing unit with a structure separate and apart from the pattern of corrupt activity. *State v. Franklin*, 2d Dist. Montgomery Nos. 24011, 24012, 2011-Ohio-6802, citing *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981).

{¶ 21}   Although Beverly frames his Second Assignment of Error in terms of a manifest-weight analysis, he actually argues that the evidence in the record is insufficient to support his conviction for Engaging in a Pattern of Corrupt Activity.

{¶ 22}   "A challenge to the sufficiency of the evidence differs from a challenge to the

manifest weight of the evidence." *State v. McKnight*, 107 Ohio St.3d 101,112, 2005-Ohio-6046, 837 N.E.2d 315. "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted). A claim that a jury verdict is against the manifest weight of the evidence involves a different test. 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶ 23} Engaging in a Pattern of Corrupt activity, is proscribed by R.C. 2923.32(A)(1), as follows:

> (A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.

{¶ 24} An "enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises. R.C. 2923.31(C).

{¶ 25} In *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246 (1981), the United States Supreme Court held that:

In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

**{¶ 26}** We have joined other Ohio courts of appeals in concluding that R.C. 2923.32 (the Ohio RICO Act) is patterned after the Federal RICO Act, Section 1962, Title 18, U.S.Code. *Franklin*, 2011-Ohio-6802. Using the language in *Turkette* as a guide, in order to establish the existence of an "enterprise" under Ohio's RICO Act, there must be some evidence of: (1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity. *Id.*; *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

[We have] applied *Turkette's* evaluation of the existence of an "enterprise" in determining if the defendant's conviction for engaging in a pattern of corrupt activity was established by sufficient evidence. *See State v. Humphrey*, Clark App. No. 02CA0025, 2003–Ohio–2825, ¶ 34; *State v. Humphrey*, Clark App. No.2002 CA 30, 2003–Ohio–3401, ¶ 41(separate appeals involving cousins and co-defendants involved in the same criminal "enterprise"); and *State v. Fritz*, 178 Ohio App.3d 65, 2008–Ohio–4389. In fact, in the latter *Humphrey* decision, we specifically cited *Turkette*, noting that the evidence indicated the existence of an ongoing organization that functioned as a continuing unit. 2003–Ohio–3401, at ¶ 41. Subsequently, in *Fritz*, we cited [*State v.*] *Owen*, [2d Dist. Miami No. 98 CA 17, 1999 WL 76826 (February 19, 1999),] and noted that we had previously " 'resolved cases questioning the existence of an enterprise under the corrupt activity statute without reference to the federal requirements.' " 2008–Ohio–4389, at ¶ 48. Despite having made this statement, we did use the federal requirements in *Fritz*, when we held that the evidence established the existence of an enterprise, because it showed that the defendants had associated in an ongoing organization with a decision-maker and supplier, and a seller, and had also functioned as a continuing unit. *Id*. at ¶ 51. *State v. Franklin*, at ¶ 94.

{¶ 27} Expanding upon its holding in *Turkette*, the United State Supreme Court in *Boyle v. United States*, 556 U.S. 938,129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), separated its inquiry into three parts: whether the association must have a structure; whether the structure must be "ascertainable"; and whether the structure must go beyond what is inherent in the pattern of racketeering activity in which its members engage. *Id*. at 2244. The Court first concluded that

an association must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purposes." *Id.* Next, the Court held that the word "ascertainable" was redundant and potentially misleading, because each element of any crime must be "ascertainable" in order for the jury to find that the element has been proven beyond a reasonable doubt. *Id.*

{¶ 28} "Regarding the last part of the inquiry, the Supreme Court reiterated its holding in *Turkette* that 'the existence of an enterprise is a separate element that must be proved.' *Id.* The Court stressed, as it had in *Turkette*, that 'the existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other.' " *Id.* at 2245, quoting *Turkette*, 452 U.S. at 583. *Franklin*, 2011-Ohio-6802, at ¶ 97.


{¶ 29} In *Franklin*, we concluded that "[w]e have never specifically rejected the application of federal law, and, in fact, have both impliedly and expressly applied federal law to Ohio RICO cases when deciding questions of sufficiency of the evidence." *Id.* at ¶ 105. Applying the definition of "enterprise" outlined in *Turkette* and *Boyle*, namely "an ongoing organization with associates that function as a continuing unit with a structure separate and apart from the pattern of corrupt activity," we conclude that the evidence in the record before us is insufficient to prove the "enterprise" element of engaging in a pattern of corrupt activity.

{¶ 30} The evidence in the record establishes that Beverly and Imber were acting in concert when they engaged in the crime spree leading to these charges. But there is no evidence in the record that Beverly and Imber were involved in any type of ongoing organization, functioning as a continuing unit, with a structure separate and apart from the pattern of corrupt

activity. At best, the evidence establishes that Beverly and Imber's actions were disorganized and chaotic in the commission of the burglaries and thefts. Accordingly, Beverly's conviction for Engaging in a Pattern of Corrupt Activity is not supported by sufficient evidence. His additional contention that the conviction is against the manifest weight of the evidence is therefore moot.

{¶ 31} We also note that the trial court erred when it failed to instruct the jury properly regarding the "enterprise" element of engaging in a pattern of corrupt activity. The charge read to the jury only contained the statutory definition of "enterprise," which is insufficient as a matter of law. "The definitions outlined in *Turkette* and *Boyle* are pertinent, and state the law correctly." *Franklin*, 2011-Ohio-6802, at ¶ 106. Thus, the trial court erred when it failed to instruct the jury on "enterprise" using the definition contained in *Turkette* and *Boyle.*

{¶ 32} Beverly's Second Assignment of Error is sustained.

**IV. Beverly's Convictions for Receiving Stolen Property and for Having a Weapon While Under a Disability Should Have Merged, Since Both Offenses Were Consummated by the Same Act – Possession of a Gun, and Were Animated by the Same Animus – His Desire to Possess a Gun**

{¶ 33} Beverly's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED IN FAILING TO MERGE COUNTS 17 AND 18 OF DEFENDANT'S CONVICTION AS THOSE COUNTS CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶ 34} Beverly contends that the trial court erred when it failed to merge Counts 17 and

18, which were the Receiving Stolen Property and Having a Weapon While Under a Disability offenses. R.C. 2941.25, concerning allied offenses of similar import, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 35} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Supreme Court of Ohio revisited the analysis courts should use in determining whether offenses are allied offenses of similar import. *Johnson* overruled *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999) "to the extent that it calls for a comparison of statutory elements solely in the abstract under R.C. 2941.25." *Johnson* at ¶44. Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*.

{¶ 36} *Johnson* states that "the intent of the General Assembly is controlling." *Id*. at ¶46. "We determine the General Assembly's intent by applying R.C. 2941.25, which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Id*. The trial court must determine prior to sentencing whether the offenses were committed by the same

conduct.   The trial court is no longer required to perform hypothetical or abstract comparisons of the offenses at issue in order to conclude that the offenses are subject to merger. *Id*. at ¶47   "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other.   If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. at ¶48. (Emphasis in original, and internal citation omitted).

**{¶ 37}**   "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id*. at ¶49 (citation omitted).   "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id*. at ¶50.   "Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge."   *Id*. at ¶51.   (Emphasis in original.)

**{¶ 38}**   Beverly's conduct in taking possession of the firearm completed both offenses. To be sure, each offense has additional elements.   The Receiving Stolen Property offense has the additional element of "knowing or having reasonable cause to believe that the property [was] obtained through the commission of a theft offense."   R.C. 2913.51(A).   The Having a Weapon While Under a Disability offense has the additional element that the offender must be under indictment or have been convicted of a felony offense of violence.   R.C. 2923.14(A)(2).   Under

*State v. Rance, supra,* these would not be allied offenses, because each contains an element not contained by the other.

**{¶ 39}** *State v. Johnson, supra,* overruled *Rance*, with its elements-of-the-offense based analysis, replacing it with an analysis based on the defendant's conduct. In *Johnson*, the Supreme Court recognized that the allied-offenses statute sets forth the defendant's *conduct* as the basis for analysis, not the elements of the offenses. *State v. Johnson*, at ¶ 44. Here, Beverly's conduct in taking possession of the firearm consummated his commission of both offenses.

**{¶ 40}** The next step of the analysis is to determine whether Beverly committed the two offenses with a separate animus as to each. R.C. 2941.25(B). We conclude that he did not.

**{¶ 41}** The Supreme Court of Ohio has interpreted the term "animus" to mean "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979); *see also, e.g., State v. Smith*, 7th Dist. Mahoning No. 11 MA 120, 2013-Ohio-756, ¶ 89; *State v. Harding*, 3d Dist. Auglaize No. 2-12-14, 2013-Ohio-643, ¶ 14; *State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2012-Ohio-5723, ¶ 37; *State v. LaPrairie*, 2d Dist. Greene No. 2010-CA-09, 2011-Ohio-2184, ¶ 41. "Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. * * * Where an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, A priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime " *Logan* at 131. "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 13.

**{¶ 42}** The evidence established that Beverly came into possession of a gun; the gun was stolen, and Beverly was not allowed to possess it due to a legal disability. However, there is nothing to suggest that Beverly possessed the gun with distinct motives both to have a stolen gun and to have one while under disability; he simply wanted to possess a gun. The offenses occurred simultaneously and, based upon the evidence in the record, one offense did not temporally precede or extend beyond the other. *Compare State v. Brown*, 3d Dist. Allen No. 1-12-33, 2013-Ohio-854, ¶ 18 (defendant's possession of firearm after committing burglary demonstrated separate animus for having weapon while under disability); *State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747 (having a weapon while under disability, carrying a concealed weapon, and illegal possession of a firearm in a liquor permit premises did not merge, where defendant acquired the weapon prior to concealing it, and then later brought it into a liquor establishment); *State v. Bray*, 2d Dist. Clark No. 2010 CA 14, 2011-Ohio-4660, ¶ 23 (same).

**{¶ 43}** The circumstances here are analogous to those in *State v. Fairfield*, 8th Dist. Cuyahoga No. 97466, 2012-Ohio-5060, in which a defendant was charged with multiple counts of Possession of a Dangerous Ordnance, Possession of Criminal Tools, and Receiving Stolen Property, among other charges. These charges arose from the defendant's possession of shock tubes, detonation cords, blasting caps, and an actuator, all of which were explosive devices that had been stolen from the United States government while the defendant was in the Army. The trial court merged "the category of offenses for the items that were the same. For instance, the court merged all of the counts for possession of a dangerous ordnance regarding the four detonation cords. However, the court then also sentenced Fairfield for possession of criminal tools and receiving stolen property regarding the same cords." *Id*. at ¶ 26.

**{¶ 44}** On appeal, the Eighth District Court of Appeals held that the defendant's offenses of Possession of Criminal Tools, Possession of a Dangerous Ordnance, and Receiving Stolen Property were allied offenses of similar import. The court noted that, under *Johnson*, "[o]ur focus is now whether it is possible for the offenses to be committed by the same conduct." *Id.* The court concluded that defendant's "receiving the stolen property in the instant case, results in him also unlawfully possessing a dangerous ordnance and possessing a criminal tool." *Id.* The court then concluded that the defendant had not acted with a separate animus in committing each offense. The court stated: "Here, there is no indication that Fairfield was acquiring the materials for separate purposes, or had a separate intent or motive in having the materials. Therefore, the offenses were all committed with the same animus." *Id*. at 28. The court concluded that, "under the facts of this case, possession of a dangerous ordnance, possession of criminal tools, and receiving stolen property are allied offenses of similar import that must be merged."[1] *Id*. at ¶ 29.

**{¶ 45}** In this case, Beverly possessed a stolen gun while he was under a legal disability from doing so. His immediate motive was to possess a gun. There is no indication that Beverly had multiple purposes that would distinguish his having a weapon while under disability from receiving stolen property. The facts that this particular gun was stolen and that Beverly was under disability when he got the gun simply resulted in the State's ability to charge him with multiple offenses as a result of Beverly's possession of the gun; it did not create a separate animus.

---

[1] The State appealed and asked the Supreme Court of Ohio to review whether Possession of a Dangerous Ordnance and Receiving Stolen Property were allied offenses of similar import. The Supreme Court declined to accept jurisdiction. *State v. Fairfield*, S.Ct. No. 2012-2103, 2013-Ohio-902 (March 13, 2013).

**{¶ 46}** Because the two offenses were not committed each with a separate animus, the trial court erred when it failed to merge them for sentencing purposes. Beverly's Third Assignment of Error is sustained.

### V. The 66½-year Sentence Imposed in this Case

### Constitutes an Abuse of Discretion

**{¶ 47}** Beverly's Fourth and Fifth assignments of error are as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A SENTENCE OF 66 ½ YEARS ON THE DEFENDANT.

THE TRIAL COURT ERRED IN IMPOSING A SENTENCE UPON THE DEFENDANT THAT WAS NOT CONSISTENT WITH SENTENCES FOR SIMILAR CRIMES COMMITTED BY SIMILAR OFFENDERS.

**{¶ 48}** In his Fourth Assignment of Error, Beverly contends that the trial court abused its discretion when it sentenced him to 66½ years in prison. In his Fifth Assignment of Error, Beverly contends that the trial court's imposition of an aggregate sentence of 66½ years is error, because his co-defendant, Imber, received a significantly shorter sentence for essentially the same conduct.[2]

**{¶ 49}** In *State v. Barker,* 2d Dist. Montgomery No. 22779, 2009-Ohio-3511, at ¶ 36-37, we stated:

> " 'The trial court has full discretion to impose any sentence within the

---

[2]After pleading guilty to ten fourth-degree felony offenses, the trial court sentenced Imber to thirteen and one-half years in prison.

authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. *State v. Foster*, 109 Ohio St.3d 1, * * * 2006-Ohio-856, at paragraph 7 of the syllabus. Nevertheless, in exercising its discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, * * * 2006-Ohio-855, at ¶ 37.' " *State v. Ulrich*, 2d Dist. Montgomery No. 23737, 2011-Ohio-758, at ¶ 20-21. "[E]ven if there is no specific mention of [R.C. 2929.11 and R.C. 2929.12], 'it is presumed that the trial court gave proper consideration to those statutes.' " *State v. Hall*, 2d Dist. Clark No. 10-CA-23, 2011-Ohio-635, ¶ 51.

**{¶ 50}** " 'When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, * * * , 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. Id.' " *State v. Ulrich*, 2d Dist. Montgomery No. 23737, 2011-Ohio-758, at ¶ 22. Beverly's sentence is not contrary to law. We therefore review his sentence under an abuse-of-discretion standard.

**{¶ 51}** Since at least 1940, innumerable Ohio cases have stated that an abuse of discretion "means more than an error of law or judgment," which incorrectly implies that a trial court may commit an error of law without abusing its discretion. *State v. Bowles,* 2d Dist.

Montgomery No. 23037, 2010-Ohio-278, ¶ 15, citation omitted. To the contrary, "[n]o court – not a trial court, not an appellate court, nor even a supreme court – has the authority, within its discretion, to commit an error of law." *Id*. at ¶ 26. The abuse-of-discretion standard is more accurately defined as " '[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.' " *Id*. at ¶ 18, quoting Black's Law Dictionary, Eighth Edition (2004), at 11.

**{¶ 52}** Upon sentencing Beverly, the trial court stated the following as its apparent rationale for imposing the sentence it ordered:

By my calculations, all of your crimes, there is [sic] fifteen distinct victims and that doesn't even include households that are occupied by more than one person.

Nor does it include the law enforcement officers whose health and safety and lives you put at risk while you were fleeing; nor does that include the women and children in these homes that you burglarized that no longer have a sense of security in their own homes.

Nor does that take into consideration probably the hundreds maybe even thousands of hours of time and effort spent by our local law enforcement agencies, tracking down all the property that you stole from people, organizing it, trying to return it to the rightful owners.

The Court is going to order that Counts 1, 9, 10, 12, 13, 14, 15, 18, 21, 22, 23, 24, [and] 25 run consecutively to one another.

The Court is going to order that Counts 2, 3, 5, 11, 16, 17, and 19 run

consecutively to one another but concurrent with the previous list of counts that I mentioned.

* * *

The aggregate sentence by my calculations will be sixty-six and one-half years (66 ½ years) in the Ohio State Penitentiary.

{¶ 53} A pre-sentence investigation report was not prepared in this case. At sentencing, the State informed the trial court on the record of Beverly's criminal record, dating back to when he was thirteen years old. The State also noted that at the time of his arrest and indictment in this case, Beverly was under indictment in a separate case for manufacturing drugs.

{¶ 54} In outlining the reasons for the sentence it imposed, the trial court did not mention Beverly's prior criminal history. Instead, the trial court noted the number of households victimized, the number of people whose personal property was stolen or damaged, and the loss of a sense of security by his victims, which was compromised as a result of Beverly's crimes. While these considerations were proper, the trial court also sought to justify Beverly's lengthy sentence by noting that law enforcement officers put in "hundreds[,] maybe even thousands[,] of hours of time and effort" spent by law enforcement agencies in investigating and tracking down all of the property stolen, organizing it, and trying to return said property to its rightful owners. We conclude that the amount of police work involved should not have formed a basis to increase Beverly's sentence. The police officers, detectives, and other law enforcement officials involved were performing their respective jobs conducting the investigation, cataloguing, and retrieving the items stolen by Beverly and Imber.

{¶ 55} Fortunately, none of the victims suffered any physical injury. Although the

anger, fear, and disturbances experienced by the victims may properly be considered, there is nothing in the record to suggest that these psychological injuries were qualitatively greater than those predictably experienced by any victim of a burglary, or that the victims are unlikely to overcome these effects within a reasonable period of time. We also note that the lack of a pre-sentence investigation report in a case of this nature makes it harder to fashion a sentence consistent with the statutory sentencing factors and guidelines found in R.C. 2929.11 and 2929.12.

{¶ 56} We do not seek to minimize the criminality of Beverly's actions and the wrong done to his victims. Nevertheless, treating this case as if these crimes were the most serious forms of the offenses, and treating Beverly as if he were the most depraved of offenders, is not supported by the evidence in the record. The imposition of the 66½-year sentence in this case deprecates the validity of similar harsh sentences in those cases that truly merit them. As Justice Lanzinger has written, "[i]t is a rare victim who does not consider the crime committed by an offender to be undeserving of a maximum penalty. * * * It will take a courageous judge not to 'max and stack' every sentence in multiple-count cases." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, at ¶31 (Lanzinger, J., concurring).

{¶ 57} Finally, Beverly argues that his co-defendant, Imber, who plead guilty, received a more lenient sentence. Specifically, Imber entered guilty pleas to ten fourth-degree felony offenses and received an aggregate sentence of thirteen and one-half years in prison, less than a quarter of the sentence Beverly received. *State v. Imber*, 2d Dist. Clark No. 11 CA 0063, 2012-Ohio-372. Although there is no information in the record to indicate whether Imber had a prior record, the evidence in the record established that Imber was equally culpable with Beverly

regarding the charged offenses. On this record, a disparity of over 50 years suggests the appearance of a trial tax, whereby one reason for Beverly's much harsher sentence was that he exercised his right to a jury trial.

{¶ 58} We conclude that although Beverly's sentence is not contrary to law, the evidence in the record does not justify the lengthy sentence imposed herein. Accordingly, we conclude that the trial court abused its discretion when it imposed a sentence of 66½ years in this case.

{¶ 59} Beverly's Fourth Assignment of Error is sustained; his Fifth Assignment of Error is overruled as moot.

## VI. Conclusion

{¶ 60} Beverly's First Assignment of Error having been overruled; his Second, Third and Fourth assignments of error having been sustained; and his Fifth Assignment of Error having been overruled as moot, his conviction and sentence for Engaging in a Pattern of Corrupt Activity is Reversed and Vacated; his sentence is Reversed; and this cause is Remanded for the merger of the Receiving Stolen Property and Having a Weapon While Under a Disability convictions and for re-sentencing.

. . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., concurring in part and dissenting in part:

{¶ 61} I disagree solely with the majority's resolution of the third assignment of error regarding merger of the Receiving Stolen Property and Having a Weapon While Under a

Disability offenses. Beverly acquired the legal disability that prevents him from possessing a firearm long before he came into possession of this stolen gun. The Weapons Under Disability statute punishes Beverly for his own past conduct as well as his current conduct.

{¶ 62} Furthermore, the gravamen of the receiving stolen property charge is the acquisition of a stolen gun which necessitates a mens rea distinct from acquiring of a gun while under legal disability. Non-merger in this case would not run afoul of the General Assembly's intent under R.C. 2923.13 to protect the general public from "bad risks" such as Beverly from having a weapon. Nor would it offend the purpose of R.C. 2941.25 to prevent shotgun convictions.

. . . . . . . . . .

Copies mailed to:

Lisa M. Fannin
Marshall G. Lachman
Hon. Douglas M. Rastatter

Case Name:        *State of Ohio v. Jordan Beverly*
Case No.:         Clark App. No. 2011 CA 64
Panel:        Fain, Donovan, Froelich
Author:         Mike Fain
Summary: