[Cite as *State v. Christian*, 2016-Ohio-516.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   25256 |
| | : | |
| v. | : | T.C. NO. 11CR563 |
| | : | |
| EVA CHRISTIAN | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the 12th day of February, 2016.

· · · · · · · · · ·

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FROELICH, J.

{¶ 1}   Eva Christian was convicted in 2012 of two counts of insurance fraud, two counts of making false alarm, and one count of engaging in a pattern of corrupt activity. In committing these offenses, Christian hired two individuals to assist her in setting up a

fabricated burglary and a phony shooting at her home, and to vandalize a restaurant she owned, in furtherance of her plan to commit insurance fraud. We affirmed her convictions in part, as modified, and reversed in part. *State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672.

{¶ 2} In our prior Opinion, we reversed Christian's conviction for engaging in a pattern of corrupt activity, finding that it was supported by insufficient evidence. Specifically, we held that there was insufficient evidence that Christian had engaged in an "enterprise" with the two individuals who helped her stage the events that gave rise to her convictions for insurance fraud; the existence of such an "enterprise" is one element of the offense of engaging in a pattern of corrupt activity. We relied on our holding in *State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, which held that, in order to establish the "enterprise," there must be some evidence of "(1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 74, quoting *Beverly* at ¶ 26. We found that the "structure" of the efforts of Christian and her associates did not go beyond Christian's efforts to stage crimes to defraud her insurance companies, and thus that the organization did not have "a structure separate and apart, or distinct, from the pattern of corrupt activity." *Christian* at ¶ 76-79.

{¶ 3} The State appealed from our judgment reversing Christian's conviction for engaging in a pattern of corrupt activity. The State also asked us to certify a conflict between our holding and several holdings of other courts of appeals, and we did certify that *Christian* was in conflict with one of those cases. *State v. Christian*, 2d Dist. Montgomery No. 25256, Decision & Entry, August 24, 2014. The certified question was:

To prove the element of enterprise in a trial for engaging in a pattern of corrupt activity under R.C. 2923.32, must the State establish that the organization, association, or group of persons has a structure that is separate and apart, or distinct, from the pattern of corrupt activity in which it engages?

{¶ 4} The Supreme Court accepted the case on both the State's appeal and the certified question. *10/22/2014 Case Announcements*, 2014-Ohio-4629; *State v. Christian*, Ohio S.Ct. Nos. 2014-1318 and 2014-1554.

{¶ 5} Our case, *State v. Beverly*, which presented an identical legal question about the evidence required to prove an "enterprise," was also pending before the Supreme Court at that time. *Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, accepted for review, *11/20/2013 Case Announcements*, 2013-Ohio-5096. The Court held *Christian* for its decision in *Beverly*.

{¶ 6} The Supreme Court decided *Beverly* in January 2015. *State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. It held that "[n]othing in R.C. Chapter 2923 [which includes R.C. 2923.32, defining the offense of engaging in a pattern of corrupt activity] implicitly or explicitly states that an enterprise and a pattern of corrupt activity must be proven with separate evidence." *Id.* at ¶ 8. The court further stated that, with respect to proof of the existence of an enterprise and of the associated pattern of corrupt activity, one does not necessarily establish the other, but "logically, evidence that proves one of the elements can sometimes prove the other, even though it doesn't necessarily do so." *Id.* at ¶ 10.

{¶ 7} In so holding, the Court rejected this court's holding in *Beverly* that there

was insufficient evidence that the defendants were involved in any type of ongoing organization, functioning as a continuing unit, with a structure separate and apart from the pattern of corrupt activity. The Supreme Court also, sua sponte, rejected any argument that the conviction was against the manifest weight of the evidence.

{¶ 8} Subsequently, the Supreme Court vacated our judgment in *Christian* and remanded for us to "consider the evidence of an enterprise in light of" its decision in *Beverly*. *State v. Christian*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888, ¶ 1. We permitted the parties to provide additional briefing, and briefing is now completed.

{¶ 9} Christian argues that, notwithstanding the Supreme Court's decision in *Beverly*, the evidence in her case in support of the count of engaging in a pattern of corrupt activity was insufficient, because other elements of the definition of "enterprise" – in addition to the separate structure of the enterprise – were unsupported by the evidence. The State disagrees and further points out that Christian did not raise any other bases for her sufficiency argument in her original appeal.

{¶ 10} As discussed in our prior opinion, R.C. 2923.32(A)(1) sets forth the offense of engaging in a pattern of corrupt activity under which Christian was charged; it states: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." An enterprise includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity," and it includes illicit as well as licit enterprises. R.C. 2923.31(C).

{¶ 11} In *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, the

Supreme Court noted that the definition of an enterprise is "remarkably open-ended" and that an "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at ¶ 9, citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L.Ed.2d 246 (1981) and *Boyle v. United States*, 556 U.S. 938, 948, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). The Court stated:

> The [U.S.] Supreme Court stated that "the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily establish the other.' " * * * We agree with this conclusion, that proof of one essential element does not "necessarily" prove another. But we emphasize that, logically, evidence that proves one of the elements can sometimes prove the other, even though it doesn't necessarily do so. The court in *Boyle* accentuated this point when it stated that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.' " In so stating, the court expressly rejected the notion that "the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity."

(Internal citations omitted.) *Beverly* at ¶ 10. The Court then held that "the existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *Id.* at ¶ 13.

{¶ 12} The facts in *Beverly* were that Beverly and another man, Brandon Imber, committed a series of thefts and burglaries in and around Clark County, Ohio, in late 2010

and early 2011. The men drove (and perhaps stole) various vehicles, and then used those vehicles to steal other items. For example, they took an Ohio Department of Transportation truck and used it to steal an expensive stump grinder. They used a stolen Chevrolet Caprice in the course of an attempted burglary. And they used a stolen truck to commit several other burglaries. The Supreme Court found that, on these facts, "the record provide[d] ample support for a rational trier of fact to conclude that Beverly and Imber constituted an association-in-fact enterprise and that they engaged in a pattern of corrupt activity. Indeed, we cannot imagine a trier of fact concluding otherwise." *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, at ¶ 16.

{¶ 13} In Christian's case, from at least early October 2009 through the end of that year, Christian had numerous conversations to enlist the help of Darryl Adams and, to a lesser extent, Adams's wife Diane Jones, to stage events which would culminate in the commission of insurance fraud and making false alarms. On Christian's instructions, Adams and Jones burglarized Christian's home by removing items that she had packed up for them, and stored those items for several weeks, but then they later returned the items to Christian's home. They also staged a shooting outside Christian's home so that she could claim to police that she was being "targeted" by someone, thus laying the groundwork for the damage to her restaurant, which formed the basis of one of her insurance claims.

{¶ 14} The most involved part of their plan involved destruction of property at Christian's restaurant, Cena. Christian hired Adams to "blow up" the place, and provided him with access to the restaurant after hours. Christian fired an employee who resembled Adams to set the employee up for the crime. When Adams's initial attempt

to vandalize the restaurant by slashing furniture, unplugging refrigerators, and dumping out liquor bottles did not produce the amount of damage desired by Christian, someone (Adams and/or Christian) made several additional attempts to cause damage by breaking appliances and inflicting other damage to the premises. Christian also started a fire, which set off sprinklers in the restaurant.

{¶ 15} Christian paid Adams and Jones for their help. Some money was paid up front and some was to be paid when Christian received the insurance check(s). It is unclear from the record when or if the latter payments were ever made.

{¶ 16} In light of the Supreme Court's holding in *Beverly*, we conclude that Christian, Adams, and Jones were part of an "enterprise," as demonstrated by the conduct related to their crimes (i.e., they were "associated together for a common purpose of engaging in a course of conduct," *id.* at ¶ 16). Their association went on for several months, during which Christian repeatedly called upon Adams and Jones to help her stage various aspects of her crimes. These efforts included feigning a legitimate relationship before the crimes began, Adams and Jones's storage of Christian's "stolen" property for several weeks, and Adams's efforts to increase the amount of damage to the restaurant when Christian found his initial efforts to be insufficient. If the collaborative efforts and offenses committed in *Beverly*, which we described as "disorganized and chaotic," [1] constituted proof of an enterprise, Christian's planning and repeated coordination with Adams and Jones to commit her crimes would also constitute proof of an enterprise.

{¶ 17} Christian also argues that, notwithstanding whether her conduct with

---

[1] *Beverly*, 2d Dist. Clark No. 2011-CA-64, 2013-Ohio-1365, at ¶ 31.

Adams and Jones constituted an enterprise because there was sufficient proof of its "structure," the definition of an enterprise still was not satisfied in her case because of insufficient evidence that the enterprise functioned as a continuing unit.   This argument is based on our statement in *Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, at ¶ 74, that an enterprise has three elements: "(1) an ongoing organization, formal or informal; (2) with associates that function as a continuing unit; and (3) with a structure separate and apart, or distinct, from the pattern of corrupt activity."   We cited our Opinion in *Beverly*, as well as *Turkette* and other cases, in setting out these criteria.   Christian asserts that, even if the structure of an enterprise existed, it did not operate as a continuing unit, and therefore her conviction was supported by insufficient evidence even in light of the Supreme Court's holding in *Beverly*.   In further support of this argument, she quotes a sentence from our prior Opinion, wherein we stated that Christian's "organization" with Adams and Jones "had a purpose, but it did not function as a continuing unit and its structure was not separate and distinct from the corrupt activity in which they engaged."   *Christian* at ¶ 77.

{¶ 18} The State correctly asserts that Christian did not challenge this aspect of the proof of her conviction for engaging in a pattern of corrupt activity in her original appeal, and we agree with the State's argument that she should not be permitted to raise additional arguments at this late juncture.   Moreover, our entire prior opinion must be analyzed in light of the Supreme Court's decision in *Beverly.*   Viewed from this perspective, we conclude that there was sufficient evidence that the enterprise functioned as a continuous unit when Christian, Adams, and Jones associated together over a period of time for a common purpose.

{¶ 19} Given the Supreme Court's holding that the criminal activity itself can establish the structure of the enterprise, we must now view differently the nature of the conduct constituting the "structure" on which the conviction for engaging in a pattern of corrupt activity was based. With the facts proven at trial, we conclude that there was sufficient evidence that the criminal organization or structure had the type of continuity required by the statute. On this record, there was sufficient evidence from which a jury could have concluded that the "associates" functioned as a continuing unit, and such a verdict was not against the manifest weight of the evidence.

{¶ 20} Finally, Christian argues that "common purpose" is also an element of an enterprise and that no reasonable jury could have found that she had a common purpose with Adams and Jones. She asserts that she sought payment from her insurance policies, whereas Adams and Jones sought quick cash from her to feed their drug habits. She also points out that she did not work together with Adams and Jones in the way that the defendants did in *Beverly* – going together from house to house and splitting what they stole.

{¶ 21} We acknowledge the factual distinctions between the crimes in *Beverly* and in this case, but even assuming, for the sake of argument only, that the State was required to prove a common purpose, there was sufficient evidence from which the jury could have found a common purpose in this case. Christian, Adams, and Jones engaged in repeated efforts to stage the events on which her insurance claims were based and, contrary to the assertion in Christian's brief, Adams and Jones did not receive all of their pay up front; some was to be paid when the insurance check(s) arrived. There was sufficient evidence from which a jury could conclude that Christian, Adams, and

Jones acted with a common purpose.

{¶ 22}   Therefore, we conclude that Christian's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence and was not against the manifest weight of the evidence, and we reinstate that conviction.

{¶ 23}   However, Christian was convicted of engaging in a pattern of corrupt activity as a felony of the first degree.   R.C. 2923.32(B)(1) provides that engaging in a pattern of corrupt activity is a felony of the second degree, except as otherwise provided in that section.   One of the exceptions states that, if at least one of the incidents of corrupt activity is a felony of the first, second, or third degree, the offense of engaging in a pattern of corrupt activity is a felony of the first degree.

{¶ 24}   Although Christian was convicted of insurance fraud as a felony of the third degree (Count 2), in our prior judgment we modified the degree of this offense to a felony of the fourth degree, because there was insufficient evidence as to the amount of the fraud to support a felony of the third degree.   *See Christian,* 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, at ¶ 53-56.   Christian's reinstated conviction for engaging in a pattern of corrupt activity is therefore modified from a felony of the first degree to a felony of the second degree.

{¶ 25}   Our reconsideration of Christian's conviction for engaging in a pattern of corrupt activity in light of the Supreme Court's decision in *Beverly,* and our reinstatement of her conviction on that offense, require us to briefly address some issues raised but not fully addressed in Christian's original appeal, because, at that time, we found them to be moot.   In light of our prior determination that Christian's conviction for engaging in a pattern of corrupt activity was supported by insufficient evidence, we did not fully address

the following issues in our prior opinion: alleged error in the jury instructions on engaging in a pattern of corrupt activity, alleged error in the forfeiture of Christian's house as property "derived from, or realized through" engaging in a pattern of corrupt activity, and alleged error in failure to merge the underlying predicate offenses with the count of engaging in a pattern of corrupt activity. We now turn to these arguments.

{¶ 26} In her third assignment of error, Christian argued that the trial court had not properly instructed the jury as to what constitutes an "enterprise," as used in the definition of engaging in a pattern of corrupt activity; she alleged that the trial court's jury instruction only included the statutory definition of an enterprise, and that prior cases from this district required a more expansive definition. Although we did not reach the merits of this assignment, we noted that the record belied Christian's assertion that only the statutory definition had been given in the instruction; the trial court "gave a lengthy instruction on the element of 'enterprise,' which went beyond the statutory definition" and encompassed the elements of enterprise set forth in *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) and *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), as described elsewhere in the opinion.

{¶ 27} Recently, the Supreme Court relied on *Turkette* and *Boyle* in its decision in *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.2d 116; these statements of the law have not changed, although *Beverly* causes us to view differently the evidence that may establish an enterprise. We now expressly find that the trial court's jury instruction on enterprise was an accurate and adequate statement of the definition of enterprise, and that the definition provided was consistent with the Supreme Court's interpretation of an "enterprise" in *Beverly*. Christian's third assignment of error is overruled.

{¶ 28} Christian also argued in her seventh assignment of error that the forfeiture of her home, which the trial court ordered as a consequence of her conviction for engaging in a pattern of corrupt activity, was improper. Specifically, she argued that the home was not "derived from, or realized through" the conduct that constituted engaging in a pattern of corrupt activity, that the house was incidental to the crimes she committed, that her indictment failed to allege that her real estate was subject to forfeiture, and that no verdict was returned on this question. She relied on R.C. 2981.04 and *State v. Bowshier*, 2d Dist. Clark No. 2937, 1993 WL 81813 (Mar. 18, 1993), in support of her argument that the indictment was required to allege that the property was subject to forfeiture and that the jury was required to return a verdict on that issue.

{¶ 29} The State conceded that the forfeiture proceedings in this case did not comply with R.C. 2981.04, which sets forth the manner in which a forfeiture may be obtained, in that the indictment did not provide notice that the State sought forfeiture of the property and the jury did not make the special finding required for such forfeiture. However, the State argued that Christian had waived this argument by failing to raise it in the trial court.

{¶ 30} In our prior opinion, we expressed skepticism about the State's argument that Christian had waived the requirements of R.C. 2981.04 by failing to object to the forfeiture in the trial court. *Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶136. However, because we vacated Christian's conviction for engaging in a pattern of corrupt activity, we likewise vacated the forfeiture of her property based on that conviction, and we did not specifically address the shortcomings of the forfeiture proceedings in this case.

{¶ 31} Forfeitures are not favored under the law and, whenever possible, forfeiture statutes must be construed so as to avoid a forfeiture of property. *State v. Lilliock,* 70 Ohio St.2d 23, 25-26, 434 N.E.2d 723 (1982); *State v. West,* 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 31. The State's ability to seek forfeiture of property is created by statute, and the State acknowledged that it did not comply with the statutory procedures required to effectuate a forfeiture. Because forfeitures are disfavored, we do not share the State's view that a forfeiture can be properly imposed where the statutory procedures have not been followed simply because the owner of the property fails to object.

{¶ 32} We are also unpersuaded by the State's argument that Christian's failure to raise this argument in the trial court waived it, because her omission precluded the trial court from correcting the errors. It is unclear from the record whether Christian was aware of the potential forfeiture before the jury rendered its verdicts. Once the verdicts were entered, neither the exclusion of the proposed forfeiture from the indictment nor its exclusion from the verdict forms could have been corrected by the trial court.

{¶ 33} Due to the State's admitted failure to comply with the statutory procedures for forfeiture, the trial court may not order Christian to forfeit her home when she is resentenced for engaging in a pattern of corrupt activity.

{¶ 34} Finally, Christian argued in her eighth assignment of error that her conviction for the underlying offenses of insurance fraud and making false alarm should have been merged at sentencing with her conviction for engaging in a pattern of corrupt activity. Having reinstated Christian's conviction for engaging in a pattern of corrupt activity, we must now consider this argument.

**{¶ 35}** The argument that predicate offenses should be merged with a conviction for engaging in a pattern of corrupt activity has been consistently rejected by Ohio courts, on the basis that "a RICO violation is a discrete offense that can be prosecuted and punished separately from its underlying predicate offenses." *State v. Moulton,* 8th Dist. Cuyahoga No. 93726, 2010–Ohio–4484, ¶ 38. *See also State v. Miranda,* 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13-14; *State v. Birdsong*, 11th Dist. Lake No. 2013-L-003, 2014-Ohio-1353, ¶ 62-68; *State v. LaSalla,* 8th Dist. Cuyahoga No. 99424, 2013-Ohio-4596, ¶ 26; *State v. Montoya,* 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 68-71. Moreover, the Supreme Court has recognized that among the purposes of the statute which criminalizes engaging in a pattern of corrupt activity are enhanced sanctions to deal with the unlawful activities of those engaged in organized crime and the imposition of cumulative liability for the criminal enterprise. *Miranda* at ¶ 13. If the purpose of the statute is to provide enhanced sanctions, this purpose is furthered by not merging the predicate offenses with the offense of engaging in a pattern of corrupt activity. *Id.* at ¶ 14. Further, the Supreme Court has repeatedly held that the conduct required to commit engaging in a pattern of corrupt activity "is independent of the conduct required to commit [the underlying predicate offenses.]" *Id.* at ¶ 13; *Beverly* at ¶ 5. Christian has not cited any cases which support her argument that such offenses should merge. Thus, we reject Christian's argument and overrule the portion of her eighth assignment of error related to merger.

**{¶ 36}** As stated above, the Supreme Court vacated our prior judgment and remanded for us to "consider the evidence of an enterprise" in light of its decision in *Beverly.* Having done so, we will modify our judgment with respect to Christian's

conviction for engaging in a pattern of corrupt activity (Count 5); we reinstate that conviction, as modified to a felony of the second degree. We also reinstate our prior judgment, which was vacated by the Supreme Court, insofar as it is not inconsistent with or modified by the additional holdings set forth in this opinion.

{¶ 37} We remand this matter to the trial court for it to resentence Christian on Count 5, engaging in a pattern of corrupt activity, a felony of the second degree, in accordance with this Opinion, and omitting the forfeiture of her home. We also remand this matter to the trial court for resentencing on Counts 2 and 3, in accordance with our prior opinion.

. . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Kirsten A. Brandt
Brock A. Schoenlein
Hon. Barbara P. Gorman