[Cite as *State v. Fisher*, 2016-Ohio-601.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2015-CA-36 |
| | : | |
| v. | : | Trial Court Case No. 14-CR-470 |
| | : | |
| ANDRE FISHER | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of February, 2016.

. . . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
　　　Attorney for Plaintiff-Appellee

KIRSTEN KNIGHT, Atty. Reg. No. 0080433, Post Office Box 137, Germantown, Ohio 45327
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Andre Fisher appeals from his conviction and sentence to three years in prison for fleeing police in his vehicle, a violation of R.C. 2921.331(B) and a third-degree

felony if the operation of the vehicle caused a substantial risk of serious physical harm to persons or property, R.C. 2921.331(C)(5)(a)(ii). Fisher's counsel has filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that the appeal is frivolous and requesting permission to withdraw. By order filed on October 7, 2015, we informed Fisher that the *Anders* brief had been filed and advised him of his right to file his own brief and the time limit for doing so. Fisher has not filed anything, and the time for filing has expired.

### The course of proceedings

{¶ 2} Fisher was indicted on July 21, 2014, on the above-stated charge, and a jury trial was conducted on March 3, 2015. City of Springfield police officer Joseph Robinson testified that on June 4, 2014, he was on routine patrol when he saw Fisher, whom he knew, get into a 2002 Saturn SUV. Robinson ran Fisher's name and learned that there was an outstanding warrant for him. Robinson knew Fisher was under a driver's suspension, and he observed Fisher commit a traffic violation. So at 7:40 p.m., Robinson pulled Fisher over.

{¶ 3} As Robinson walked up to the vehicle, he recognized Fisher as the driver. He knew Fisher from previous law enforcement and personal dealings. They both played darts, and they had run into each other at various clubs and tournaments over the past three years. Robinson called Fisher by name and told him that he was under arrest. Fisher replied, "Cool Joey. Hey, let me go ahead and pull the vehicle over." But he didn't pull over. Instead, Fisher sped away, and a lengthy chase ensued that "presented a danger to the citizens."

{¶ 4} Officer Robinson described in detail the route that the chase took through

Springfield, using a series of aerial maps (State's Exhibits 1 to 13), which, though not physically admitted as exhibits, were shown to the jury on a television screen. Robinson followed Fisher with his lights and siren on through numerous residential and commercial areas at speeds between 40 and 60 miles per hour—well over the posted limits. Fisher ran stop signs and red lights, weaved his way through traffic at intersections, and almost struck a police cruiser. He also cut through occupied parking lots.

{¶ 5} Springfield police officer Keith McConnell (22 years of police experience) also testified. He said that he and his partner were heading toward the location that Officer Robinson had stopped Fisher when an SUV came around a corner and almost hit them head-on. McConnell joined the chase, and his description of it is consistent with Robinson's description. McConnell did not know who was driving the SUV.

{¶ 6} Springfield police officer Cody Anderson (9 years with the police department) was involved in the chase too. He testified that during the chase he was preparing to deploy stop sticks at the intersection of Burnett Road and Sheridan when he saw the vehicle approaching him head-on. He pulled over, and the SUV passed him. Officer Anderson saw the driver, whom he identified as Fisher. Anderson also saw a female passenger and a dog in the back seat.

{¶ 7} Eventually, Fisher passed Sergeant Doug Pergram, who has been with the Springfield police department for 19 years and has been a sergeant since 2001. Pergram called off the chase. He testified that he called it off because Fisher's driving was erratic and the police knew who he was and had a description of the vehicle and the license plate. Pergram also saw a pizza driver in a parking lot almost get hit. Pergram said that he saw a passenger and a pit bull in the back seat of the vehicle, but he could not identify

the driver.

{¶ 8} There were no other witnesses. The jury returned a guilty verdict and found that Fisher's conduct created a substantial risk of serious physical harm to persons or property.

{¶ 9} At the sentencing hearing on March 12, 2015, the state requested the maximum sentence, pointing out that Fisher had previously been convicted for failure to comply for which he was sentenced to two years in prison. The court noted that Fisher had also served two prison terms for domestic violence. The court said that it had considered the sentencing factors in R.C. 2921.331(C)(5)(b), the purposes and principles of sentencing, and the general statutory sentencing factors. The court then imposed the maximum of 3 years in prison and imposed a mandatory lifetime driver's license suspension because of Fisher's prior conviction for the same offense. Fisher was notified of the possibility of three years of post-release control.

{¶ 10} Fisher appealed.

## Potential assignments of error

{¶ 11} Although appellate counsel found no merit to the appeal, she identifies three potential assignments of error for us to consider. The first potential error concerns whether the finding of guilt is supported by sufficient evidence and whether the verdict is contrary to the manifest weight of the evidence. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶ 12}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Id.* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (saying that " 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶ 13}** Here we agree with counsel that an assignment of error regarding sufficiency or manifest weight of the evidence would be frivolous. Two police officers identified Fisher as the driver of the vehicle. Officer Robinson, who knew Fisher, saw him get into the vehicle. After stopping Fisher, Robinson was within a few feet when he addressed Fisher by name and Fisher responded using the officer's nickname. There is no evidence contradicting the two identifications of Fisher as the driver. Moreover, the evidence about the lengthy chase, the running of stop signs and traffic lights, and the weaving through traffic that nearly caused collisions is abundantly sufficient to demonstrate a risk of serious harm to the point that any argument to the contrary is frivolous. Likewise, having reviewed all the testimony, we conclude that the weight of the uncontradicted evidence so clearly establishes the elements of the offense that no

reasonable argument can be made that the verdict is against the manifest weight. The first potential assignment of error lacks arguable merit.

{¶ 14} The second potential assignment of error suggests that Fisher was prejudiced by ineffective assistance of trial counsel. In this regard appellate counsel says that in opening statements trial counsel indicated that he anticipated being able to show that Fisher had an alibi, that at the time of the offense he was at his mother's house in Columbus, Ohio. But all counsel said in his opening statement is that at the time of the offense Fisher was with his mother and the mother of his child in Columbus. Counsel stopped short of saying that either would actually testify. After the State rested, out of the hearing of the jury, Fisher's counsel said, "I'll let the court know my two witnesses I ascertained were from Columbus are not here. We anticipated that the defendant's sister was getting them here today, but they are not here so I don't have any witnesses to put on." (Trial Tr. 125). There was no request for a continuance or further explanation. During closing, Fisher's counsel commented, "Andre's mom wasn't able to be here." (*Id.* at 132) The record contains no other information about why Fisher's mother and sister were not at the trial.

{¶ 15} Assistance of counsel is not ineffective unless and until it is proven that counsel's performance fell below an objective standard of reasonable representation and that counsel's performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, there is simply nothing in the record to support a non-frivolous argument concerning ineffective assistance of counsel. Whether the witnesses appeared, why they did not appear, or what their testimony would have been is unknown. We agree with appellate counsel that an assignment of error

based on ineffective assistance lacks arguable merit and is frivolous.

{¶ 16} The final potential assignment of error suggested by counsel is a challenge to the maximum sentence of three years that was imposed. "[A] trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." (Citation omitted.) *State v. King*, 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). Moreover, a maximum sentence is not contrary to law when it is within the statutory range and the trial court has considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors. *State v. Walker*, 2d Dist. Montgomery No. 25741, 2014-Ohio-1287, ¶ 17-19; *State v. Hayes*, 2d Dist. Clark No. 2014-CA-27, 2014-Ohio-5362, ¶ 15. Applying these standards, we see no non-frivolous argument that can be made to challenge Fisher's maximum sentence of three years. He had previously been sentenced to prison several times, one of which was for the very same offense for which he was convicted in this case, and the court considered the applicable statutory provisions. This potential assignment of error has no arguable merit.

### *Anders* Review

{¶ 17} We also have performed our duty under *Anders* to conduct an independent review of the record. We have thoroughly reviewed the docket, the various filings, the written transcript of the jury trial, and the sentencing disposition. We have found no non-frivolous issues for review. Accordingly, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . .

FAIN, J., and FROELICH, J., concur.

Copies mailed to:
Ryan A. Saunders
Kirsten Knight
Andre Fisher
Hon. Douglas M. Rastatter