[Cite as *State v. Beverly*, 2016-Ohio-8078.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | Appellate Case No. 2015-CA-71 |
| | : | |
| Plaintiff-Appellee | : | Trial Court Case No. 11-CR-258 |
| | : | |
| v. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| JORDAN BEVERLY | : | |
| | : | |
| Defendant-Appellant | : | |
| | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of December, 2016.

. . . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Jordan Beverly appeals from his resentencing on charges of engaging in a

pattern of corrupt activity, burglary (eight counts), attempted burglary (two counts), receiving stolen property (five counts), having weapons while under disability, and fleeing and eluding.

{¶ 2} Beverly advances two assignments of error. First, he contends the trial court abused its discretion in imposing an aggregate 50-year prison sentence. Second, he claims the trial court erred in imposing an aggregate sentence that was not consistent with the sentence received by a co-defendant who pled guilty.

{¶ 3} The record reflects that Beverly was indicted on the above-referenced charges and others in April 2011. The charges primarily stemmed from a series of thefts and burglaries in and around Clark County in late 2010 and early 2011. Beverly allegedly committed the offenses with co-defendant Brandon Imber. In August 2011, a jury found Beverly guilty on one count of engaging in a pattern of corrupt activity, eight counts of burglary, six counts of receiving stolen property, two counts of attempted burglary, two counts of fleeing and eluding, and one count of having weapons while under disability. The trial court merged the two counts of fleeing and eluding. It then sentenced Beverly to an aggregate prison term of 66.5 years. Co-defendant Imber separately pled guilty to 10 fourth-degree felonies (receiving stolen property, attempted burglary, and having weapons while under disability) and received a prison sentence of 13.5 years.

{¶ 4} On appeal, this court reversed Beverly's conviction for engaging in a pattern of corrupt activity, finding that the State had failed to prove the "enterprise" element of the offense. *See State v. Beverly*, 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 3. This court also concluded that his aggregate 66.5 year sentence was an abuse of discretion and that a weapons-under-disability and a receiving stolen property conviction should

have merged as allied offenses. *Id.* As a result, this court reversed and remanded for resentencing. On further appeal, the Ohio Supreme Court reversed this court's judgment with regard to the conviction for engaging in a pattern of corrupt activity. It concluded that the "enterprise" element had been proven. *See State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116. The Ohio Supreme Court did not review the appropriateness of Beverly's sentence. It remanded for resentencing, apparently pursuant to this court's prior mandate, after reinstating the corrupt-activity conviction.

{¶ 5} The trial court subsequently held a resentencing hearing on June 19, 2015. At the outset of the hearing, the parties and the trial court agreed that applicable changes to the law had reduced the maximum potential sentence on the third-degree felony counts from five years in prison to three years. They also agreed that the maximum potential penalty on the corrupt-activity conviction was ten years in prison. The parties also recognized that the trial court now was obligated to make statutory findings before imposing consecutive sentences. Finally, they agreed that the trial court would consider additional information not before it at the time of the original sentencing, namely a PSI report (which had not been prepared before the original sentencing) and a report concerning Beverly's conduct while in prison.

{¶ 6} After hearing arguments from counsel, the trial court merged the two convictions discussed by this court in Beverly's prior appeal. It then made the findings required for consecutive sentences and imposed the following prison terms: 10 years for engaging in a pattern of corrupt activity (F1); one year for receiving stolen property (F4); one year for receiving stolen property (F5); 18 months for receiving stolen property (F4); three years for attempted burglary (F3); three years for burglary (F3); one year for

receiving stolen property (F4); three years for burglary (F3); three years for burglary (F3); three years for burglary (F3); three years for burglary (F3); one year for receiving stolen property (F4); three years for having weapons under disability (F3); three years for fleeing and eluding (F3); 18 months for attempted burglary (F4); three years for burglary (F3); three years for burglary (F3); and three years for burglary (F3). The trial court ordered all of the foregoing terms to be served consecutively. This appeal followed.

{¶ 7} In his first assignment of error, Beverly challenges his aggregate 50-year prison sentence as an abuse of discretion. He advances several arguments in support. First, he cites this court's statement in his prior appeal that "treating this case as if these crimes were the most serious forms of the offenses, and treating Beverly as if he were the most depraved of offenders, is not supported by the evidence in the record." *Beverly*, 2013-Ohio-1365, at ¶ 57. Second, he cites this court's observation in his prior appeal that the disparity between his then 66.5-year sentence and co-defendant Imber's 13.5 year sentence had the appearance to be a "trial tax" on Beverly given that "the evidence in the record established that Imber was equally culpable with Beverly regarding the charged offenses." *Id.* at ¶ 58. Third, he argues that the trial court's reduction in his sentence from 66.5 years to 50 years is no reduction at all when sentencing-law changes are considered. Beverly notes that the statutory maximum sentence for his 11 third-degree felonies was reduced from five years to three years prior to his resentencing. Consequently, if the trial court had made that change and otherwise resentenced him exactly as it had the first time, his aggregate sentence would have been reduced by 22 years. Instead, the trial court limited the reduction to 16.5 years by ordering some previously-concurrent sentences to run consecutively. Beverly argues that this act by the trial court had the

appearance of an impermissible "appeal tax" to punish him for his successful sentencing appeal. Finally, he asserts that nothing in the PSI report or the report about his prison conduct justifies a 50-year aggregate sentence that he contends is in conflict with this court's prior opinion finding an abuse of discretion.

{¶ 8} In his second assignment of error, Beverly reiterates his complaint about the disparity between his aggregate sentence and co-defendant Imber's 13.5-year sentence. Based on the same reasoning set forth above, he maintains that the disparity is evidence of an impermissible "trial tax" or "appeal tax."

{¶ 9} Upon review, we find both of Beverly's assignments of error to be unpersuasive. As a threshold matter, the abuse-of-discretion standard cited by Beverly on appeal and adopted by this court in his prior appeal no longer applies. In *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, the Ohio Supreme Court recently agreed with our determination in *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.) and other cases that the abuse-of-discretion standard does not apply to "sentencing-term challenges." *Marcum* at ¶ 10. Rather, the standard set forth in R.C. 2953.08(G)(2) applies to all such challenges. Under that standard, we may vacate or modify a sentence only if we find, by clear and convincing evidence, that the sentence is contrary to law or that the record does not support the trial court's findings under certain statutes (including the findings required for consecutive sentences). *Id.* at ¶ 22. While acknowledging that some sentences do not require any of the findings referenced in R.C. 2953.08(G)(2), the Ohio Supreme Court also reasoned:

> * * * [I]t is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C.

2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Id*. at ¶ 23.

{¶ 10} In light of *Marcum* and this court's own pre-*Marcum* precedent, the question is not whether Beverly's 50-year prison term on resentencing constitutes an abuse of discretion. Instead, we may vacate or modify his sentence only if we determine, by clear and convincing evidence, that the record does not support his sentence, including the trial court's consecutive-sentence findings, or that his sentence is contrary to law.

{¶ 11} With the foregoing standards in mind, we conclude that Beverly's individual sentences and his aggregate sentence are not contrary to law.[1] Each individual sentence is within the authorized statutory range, and the trial court expressly stated in its judgment entry that it had considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors. *See State v. Fisher*, 2d Dist. Clark No. 2015-CA-36, 2016-Ohio-601, ¶ 16 (recognizing that even a maximum sentence is not contrary to law "when it is within the statutory range and the trial court has considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors."). Nor is the trial court's imposition of consecutive sentences contrary to law. This is so because the trial court made the consecutive-sentence findings

---

[1] This court previously reached the same conclusion in Beverly's first appeal, acknowledging that even his 66.5-year sentence was not contrary to law. *Beverly*, 2013-Ohio-1365, at ¶ 51.

mandated by R.C. 2929.14(C)(4). *See State v. Mabra*, 2d Dist. Clark No. 2014-CA-147, 2015-Ohio-5493, ¶ 47 (noting that consecutive sentences are not contrary to law when the trial court makes the requisite statutory findings).

{¶ 12} The remaining question is whether the record clearly and convincingly fails to support Beverly's individual sentences or the trial court's consecutive-sentence findings. With respect to Beverly's individual sentences, the record does not clearly and convincingly fail to support any of them. Although most of those individual sentences were maximum terms, the information before the trial court at the time of resentencing fully supports them. The record also does not clearly and convincingly fail to support the trial court's consecutive-sentence findings.

{¶ 13} In reaching the foregoing conclusions, we turn first to the PSI report. It reflects that Beverly, who was 23 years old at the time of the offenses at issue, had a juvenile record dating back to age 14. His juvenile violations included domestic violence, a probation violation, theft, drug abuse, receiving stolen property, a second probation violation, and a second receiving stolen property offense. He later was bound over to adult court for burglary and receiving-stolen-property in 2003 when he was 15 years old. According to the PSI, his adult record included a conviction at age 17 for harassment by an inmate, which resulted in six months of confinement. Upon his release, he was convicted of burglary in 2005 and received a six-year prison sentence. In addition, he was charged with manufacturing methamphetamines in 2010. He pled to possession of criminal tools and received a one-year prison sentence. (Resentencing Tr. at 23).

{¶ 14} According to a bill of particulars, Beverly's convictions in the present case included burglarizing eight homes in the Clark County area and attempting to burglarize

two others. He appears to have committed these offenses shortly after his release from prison on the six-year sentence he had received for burglary in 2005. The receiving-stolen-property offenses involved him being in possession of several stolen vehicles, stolen firearms, and other items. An Ohio Risk Assessment completed as part of the PSI in this case assigned Beverly a risk-assessment score of 36, which was classified as "very high." Although Beverly blamed his burglaries and other crimes on a drug habit, we note that he apparently failed to break that habit despite previously receiving a six-year prison sentence for burglary. The record contains little, if anything, to suggest that Beverly was on the verge of breaking his habit this time either, or that he even had a plan or serious desire to do so. Although he has completed drug and alcohol counseling in prison, his continued use of alcohol and marijuana while incarcerated (as evidenced by the prison records accompanying the PSI report) supports a reasonable inference that his drug use and, by extension, his criminal activity, will continue.

{¶ 15} Based on the prison records available to the trial court, Beverly's behavior since being conveyed to prison in 2011 has not improved. Those records indicate that he has had 68 "Guilty Infractions" in the roughly 3.5 years between November 16, 2011 and May 4, 2015. His infractions have included repeatedly masturbating in front of staff, destroying prison property, disobeying direct orders, attempting to spit on staff, causing disturbances, becoming intoxicated, possessing contraband (including a shank), attempting to flood his cell, threatening a guard, tampering with a cell lock, and testing positive for marijuana. According to the prison records, Beverly is classified as a level 4B or "maximum security" inmate.

{¶ 16} With regard to the trial court's imposition of consecutive sentences, that issue is governed by R.C. 2929.14(C)(4), which permits consecutive prison terms if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

* * *

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 17} Here the trial court made each of the forgoing findings, including both of the alternative findings under R.C. 2929.14(C)(4)(b) and (c). Specifically, it found

* * * that consecutive sentences are necessary to protect the public from future crime and to punish the defendant, that they are not disproportionate to the seriousness of his conduct and to the danger he poses to the public.

That his history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the defendant, and that the multiple offenses committed herein were part of a course of conduct and the harm caused by these multiple offenses [was] so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of his conduct.

(Resentencing Tr. at 27).

{¶ 18} Upon review, we do not believe the record clearly and convincingly fails to support the trial court's consecutive-sentence findings. After compiling an extensive juvenile record and receiving a six-year prison sentence for burglary, Beverly proceeded to engage in a months-long crime spree that included burglarizing eight houses and attempting to burglarize two more. At sentencing, the State represented that someone was home on at least one of these occasions. Beverly and his co-defendant used stolen vehicles to commit the crimes and were found in possession of stolen property including firearms. While serving time in prison following his convictions, Beverly's behavior has been deplorable. Due to the long-term nature of his criminal activity, the number and nature of his offenses, and his demonstrated inability or unwillingness to be rehabilitated, the trial court reasonably concluded that consecutive sentences were necessary to protect the public from future crime and to punish Beverly and that consecutive sentences were not disproportionate to the seriousness of his conduct and to the danger he poses to the public. The record likewise supports the trial court's finding under R.C. 2929.14(C)(4)(c) that Beverly's history of criminal conduct demonstrates the necessity of consecutive sentences to protect the public from future crime by him. In light of that

determination, we need not address the trial court's additional alternative finding under R.C. 2929.14(C)(4)(b), which was unnecessary.

**{¶ 19}** Although Beverly's aggregate prison term is undeniably harsh—and likely harsher than this court would have imposed—we have no basis to conclude that the consecutive sentences the trial court imposed are clearly and convincingly unsupported by the record, which is the applicable standard of review. Under this "extremely deferential" standard, we simply are not permitted to substitute our judgment for that of the trial court. *State v. Brandon*, 2d Dist. Clark Nos. 2014-CA-143, 2014-CA-144, 2014-CA-145, 2016-Ohio-227, ¶ 12.

**{¶ 20}** With regard to the specific arguments raised in Beverly's appellate brief, we find them to be unpersuasive. As set forth above, he cites this court's determination in his prior appeal that "treating this case as if these crimes were the most serious forms of the offenses, and treating Beverly as if he were the most depraved of offenders, is not supported by the evidence in the record." *Beverly*, 2013-Ohio-1365, at ¶ 57. The short answer to this argument is that two significant changes have occurred since Beverly's original sentencing and this court's initial review. First, the standard of review is different. In the first appeal, this court applied the less deferential abuse-of-discretion standard. Herein, we have applied the standard set forth in R.C. 2953.08(G)(2). Application of a different review standard reasonably may produce a different result. Second, the evidence before us is different. When resolving Beverly's first appeal, this court expressly noted the absence of a PSI report and the difficulty that created. *Id.* at ¶ 56. Here, the trial court had the benefit of a PSI report, which was not favorable to Beverly, as well as a report detailing his misconduct in prison during the roughly 3.5 years since his

convictions. At a minimum, that information, which we discussed above, supports the trial court's imposition of consecutive sentences enough to preclude a finding that the record clearly and convincingly *does not* support such sentences.

{¶ 21} Beverly also objects to the disparity between his sentence and co-defendant Imber's 13.5-year aggregate sentence. He cites this court's concern in his first appeal that the disparity between his 66.5-year sentence and Imber's 13.5-year sentence had the appearance of an impermissible "trial tax." Beverly now argues that the current disparity between his 50-year sentence and Imber's 13.5-year sentence appears to be an impermissible "appeal tax." In other words, he suggests that the trial court punished him for his successful prior appeal of his sentence. In support, he reasons that if the trial court simply had re-imposed his original sentence while reducing the maximum sentence for his 11 third-degree felonies from five years to three to account for a change in the law, his aggregate sentence would have been reduced by 22 years, from 66.5 years to 44.5 years. Instead, the trial court imposed an aggregate 50-year prison term by making some previously-concurrent prison terms consecutive.

{¶ 22} Upon review, we see no impermissible "trial tax" or "appeal tax." In Beverly's prior appeal, this court reversed his entire sentence and remanded for resentencing. In so doing, this court held that his aggregate 66.5-year sentence was not supported by the then-existing record and was an abuse of discretion. *Beverly*, 2013-Ohio-1365, at ¶ 59. Addressing the disparity between Beverly's 66.5-year sentence and Imber's 13.5-year sentence, this court also opined:

> Finally, Beverly argues that his co-defendant, Imber, who plead guilty, received a more lenient sentence. Specifically, Imber entered guilty

pleas to ten fourth-degree felony offenses and received an aggregate sentence of thirteen and one-half years in prison, less than a quarter of the sentence Beverly received. *State v. Imber*, 2d Dist. Clark No. 11 CA 0063, 2012-Ohio-372[0]. Although there is no information in the record to indicate whether Imber had a prior record, the evidence in the record established that Imber was equally culpable with Beverly regarding the charged offenses. On this record, a disparity of over 50 years suggests the appearance of a trial tax, whereby one reason for Beverly's much harsher sentence was that he exercised his right to a jury trial.

*Id.* at ¶ 58.

**{¶ 23}** In the present re-sentencing appeal, we see no indication of an impermissible "trial tax" or "appeal tax" based on the disparity between Beverly's 50-year sentence and Imber's 13.5-year sentence. "It is beyond dispute that a defendant cannot be punished for refusing to plead guilty and exercising his right to a trial [or his right to appeal]." *State v. Anderson*, 2d Dist. Montgomery No. 26525, 2016-Ohio-135, ¶ 7, citing *State v. Blanton*, 2d Dist. Montgomery No. 18923, 2002 WL 538869, *2-3 (April 12, 2002). " 'Accordingly, when imposing a sentence, a trial court may not be influenced by the fact that a defendant exercised his right to put the government to its proof rather than pleading guilty.' " *Id.*, quoting *Blanton* at *2-3. "Where the record creates an inference that a defendant's sentence was enhanced because he elected to put the government to its proof [or pursued a successful sentencing appeal], we have looked for additional evidence dispelling the inference and unequivocally explaining the trial court's sentencing decision." *Id.*

{¶ 24} Here the re-sentencing record does dispel any inference of an impermissible trial tax or appeal tax based on the disparity in the sentences received by Beverly and Imber. Even if we accept, arguendo, that the two men were equally culpable with regard to the crimes they committed together, "it does not follow * * * that equally culpable defendants necessarily must receive the same or similar sentences." *Id*. at ¶ 9. Other factors may exist making such defendants "not similarly situated in all relevant respects for purposes of sentencing." *Id*. We find that to be the case here. For one thing, Beverly and Imber were not convicted and sentenced on the same or even substantially-similar offenses. Imber pled guilty to 10 *fourth-degree* felonies. They consisted of six counts of receiving stolen property, three counts of attempted burglary, and one count of having a weapon while under disability. In contrast, Beverly was sentenced on one count of *first-degree* felony engaging in a pattern of corrupt activity, eight *third-degree* felony counts of burglary, one *third-degree* felony attempted burglary, one fourth-degree felony attempted burglary, four fourth-degree felony counts of receiving stolen property, one fifth-degree felony receiving stolen property, one *third-degree* felony having weapons while under disability, and one *third-degree* felony fleeing and eluding. In addition to his fourth and fifth-degree felony convictions, then, Beverly had a first-degree felony conviction and 11 third-degree felony convictions that Imber did not have. This fact significantly distinguishes Beverly and Imber for purposes of sentencing.

{¶ 25} A second distinction between Beverly and Imber exists as well. Imber's guilty plea included a promise to cooperate with authorities, and to testify against Beverly if called, in exchange for an agreed sentence of 12 years. Following Beverly's trial, the court found that Imber, who was not called to testify, had "partially not complied" with his

obligations under the plea agreement and, apparently for that reason, deviated from the agreed 12-year prison term and imposed a 13.5 year prison sentence. *State v. Imber*, 2d Dist. Clark No. 11CA0063, 2012-Ohio-3720 (Froelich, J., concurring). Nevertheless, it appears that Imber's sentence still was, in part, the product of his plea agreement. The court's observation at sentencing that Imber had "partially not complied" necessarily implied that he also "partially had complied" with his obligations, a fact that may have influenced the trial court when it imposed Imber's sentence. Essentially, then, Imber "was rewarded for pleading guilty and agreeing to testify against [Beverly]. It is permissible to reward a defendant by mitigating his sentence when he chooses to waive a constitutional right and cooperate with authorities. * * * [Beverly], who stood on his rights and went to trial, received no such reward. Although the distinction may be subtle, this does not mean he was punished for exercising his constitutional rights" to go to trial or to pursue an appeal. *Anderson* at ¶ 11.

{¶ 26} Finally, we note the absence of evidence regarding Imber's criminal history. In *Beverly's* prior appeal, this court recognized that fact, but reasoned: "Although there is no information in the record to indicate whether Imber had a prior record, the evidence in the record established that Imber was equally culpable with Beverly regarding the charged offenses." As explained above, however, the fact that the two defendants may be "equally culpable" with regard to charged offenses is not dispositive of the respective sentences they should receive. *Anderson* at ¶ 9. Indeed, each defendant's "history of criminal conduct" also is a statutory factor for a trial court to consider when deciding whether to impose consecutive sentences. *See* R.C. 2929.14(C)(4)(c). For the reasons set forth above, we conclude that Beverly's history of criminal conduct as a juvenile, as

an adult, and while in prison supports the trial court's aggregate sentence. We see no reason why we must assume that Imber's history of criminal conduct is equal to Beverly's. Therefore, for all of the foregoing reasons, the disparity between Beverly's 50-year sentence and Imber's 13.5-year sentence fails to persuade us that the trial court impermissibly punished Beverly for going to trial or for pursuing a successful sentencing appeal.

{¶ 27} Beverly's two assignments of error are overruled, and the trial court's judgment is affirmed.

. . . . . . . . . . . . .

FAIN, J., concurs.

DONOVAN, J., dissenting:

{¶ 28} I disagree. This sentence is draconian. In my view, the findings made by the trial court in support of a fifty-year sentence for a serial burglar/thief (F3s, F4s, and F5s) lack support in the record, ignore the findings in our prior decision in *Beverly*, and fail to recognize the legislative intent of the complex sentencing scheme as enacted by the Ohio General Assembly.

{¶ 29} Once again, the trial court imposed the equivalent of a life sentence upon an individual who did not commit a homicide, who is not a violent sexual predator, and who has not been convicted of any crime involving a physical injury or serious psychological injury. Beverly's criminal history includes a solitary case involving physical harm to a person to wit: a fourth degree misdemeanor domestic violence adjudication at the age of ten. None of Beverly's convictions are felonies of the first degree short of the

Corruption Enterprise Conviction, which resulted in an additional 10-year prison term.

{¶ 30} The Ohio Felony Sentencing Commission denounced the practice of basing the harshest prison terms on the status of an offender, such as "a repeat aggravated burglar," and instead favored basing the harshest terms on any actual or threatened harm the offender may have caused during the commission of a crime. The Commission emphasized the need to reserve the harshest prison sentences for offenders who are repeat offenders of felonies "that resulted in actual or attempted serious physical harm to a person." *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission* (July 1, 1993), at 29.

{¶ 31} Although a PSI was prepared on remand, the bulk of new information relates to post-sentence prison infractions. Post-crime prison conduct does not relate to the seriousness of the crimes at all. Although I'd acknowledge such infractions may have some bearing upon dangerousness and rehabilitation, prison conduct should not be the equivalent of an elevator that only rapidly ascends upward to artificially inflate the seriousness of the crimes which led to imprisonment. It is not surprising that an extremely excessive original term of 66½ years without the reasonable prospect of an early release understandably leads to an atypical and significant hardship vis-á-vis the ordinary incidents of prison life. "The recipient of an excessive sentence will learn, through comparison of his own sentence with those of his fellow prisoners, that he has been the victim of injustice. His resentment inevitably breeds unrest and disciplinary problems, and, in addition, may well undermine his reformation." Weigel, *Appellate Revision of Sentences: To Make the Punishment Fit the Crime*, 20 Stan. L. Rev. 405, 410 (1968). Furthermore, the court should not take into account only evidence which is

unfavorable to Beverly while simultaneously turning a blind eye to evidence which is favorable to Beverly's post-sentencing rehabilitation.

{¶ 32} Defense counsel noted that Beverly had completed his GED, had been taking classes, had attended two AA classes, had participated in three anger management classes, and had taken a position of responsibility in the prison that consisted of running the dog program at Warren Correctional. Tr. pg. 12. Defense counsel also emphasized that Beverly did not have any affiliations with gangs, and was involved in minor fights that resulted in "some minor tickets" that typically accompany the prison environment. Tr. pg. 12 .

{¶ 33} Further, it is significant to note that the PSI contains erroneous information which leads the majority to draw a conclusion regarding Beverly's adult incarceration history that is erroneous. Public record establishes that when Beverly was bound over to adult court for burglary and receiving stolen property in 2003, Beverly was convicted of a single burglary pursuant to a plea agreement with the State, which involved the State agreeing to dismiss all other pending charges. *See State v. Beverly*, Clark C.P. No. 03-CR-431 (Aug. 7, 2003). It was for this burglary conviction that Beverly was sentenced to serve a six-year prison term, thus it was during this six-year term that Beverly was charged and convicted of harassment by an inmate in 2005. There was no "subsequent conviction" of burglary in 2005 following a release from prison, as the majority concludes. The PSI contains an erroneous 2005 conviction date for the 03-CR-431 case, leading the majority to conclude there was a prison release and re-offense.

{¶ 34} This Court is entitled to take judicial notice of such matters of public record,

where the facts stated within that public record are undisputed. *McKenzie v. Davies*, 2d Dist. Montgomery No. 22932, 2009-Ohio-1960, ¶ 24. A judicially noticed fact is not subject to reasonable dispute if it is either: "(1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* at ¶ 22, citing Evid.R. 201(B). Moreover, this Court may take judicial notice of facts in the last analysis which are "ultimate and predominate truths, uncontrollable by litigants or by authorities brought forward to refresh the court's memory." *Id.* Further, judicial notice may be taken of "findings and judgments as rendered in other Ohio cases," as well as "public records available on the internet." *Caghan v. Caghan*, 5th Dist. Stark No. 2014 CA 00094, 2015-Ohio-1787, ¶ 60, quoting *State ex rel. Kolkowski v. Bd. of Commrs. of Lake Cty.*, 11th Dist. Lake No. 2008-L-138, 2009-Ohio-2532, ¶ 38. With the benefit of this correct information, it is clear that Beverly had been imprisoned in an adult institution on two prior adult convictions on a continuum, not release and re-offending.

{¶ 35} Significantly, the trial court disregarded our first opinion in *Beverly* concerning a lack of depravity and the lack of evidence that these crimes constitute the worst form of the offense(s). In our initial decision, we looked to the factors set forth in R.C. 2929.12(B), which relate to whether his conduct was more serious than conduct normally constituting the offense. We noted that the trial court's imposition of a 66½ year sentence did not comply with the purposes and principles of sentencing set forth in R.C. 2929.11, emphasizing:

> Fortunately, none of the victims suffered any physical injury. Although the
>
> anger, fear, and disturbances experienced by the victims may properly be

considered, *there is nothing in the record to suggest that these psychological injuries were qualitatively greater than those predictably experienced by any victim of a burglary, or that the victims are unlikely to overcome these effects within a reasonable period of time . . .* [T]reating this case as if these crimes were the most serious forms of the offenses, and treating Beverly as if he were the most depraved of offenders, is not supported by the evidence in the record. The [sentence] in this case deprecates the validity of similar harsh sentences in those cases that truly merit them.

(Emphasis added.)   *Beverly,* 2d Dist. Clark No. 2011 CA 64, 2013-Ohio-1365, ¶ 56-57.

**{¶ 36}** This finding in *Beverly* is not altered by anything that was adduced in the new sentencing hearing on remand.   In fact, our first opinion reflects the trial court was aware of Beverly's criminal record at the original sentencing.   We noted that "at sentencing, the State informed the trial court on the record of Beverly's criminal record, dating back to when he was thirteen years old.[2]   The State also noted that at the time of his arrest and indictment in this case, Beverly was under indictment in a separate case for manufacturing drugs."   *Id.* at ¶ 54.

**{¶ 37}** This Court has recognized that the law of the case doctrine limits the scope

---

[2] The bulk of Beverly's previous criminal offenses were committed when he was under the age of 16. In light of recent Ohio and United States Supreme Court authority recognizing that juvenile offenses are not equivalent in all respects to offenses committed by an adult, I question whether the trial court should have given his juvenile "criminal history" the same weight as offenses committed by an adult.   *See State v. Hand*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-5504; *Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016); *Miller v.* Alabama, __ U.S. __, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).

of a resentencing hearing: "[a] remand for a new sentencing hearing generally anticipates a de novo sentencing hearing. R.C. 2929.19(A). However, a number of discretionary and mandatory limitations may apply to narrow the scope of a particular resentencing hearing." *State v. Powers*, 2d Dist. Montgomery No. 24476, 2011-Ohio-5977, ¶ 7, quoting *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381.

{¶ 38} The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan,* 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). "[W]here at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law." *Id*. Thus, "the trial court is without authority to extend or vary the mandate given." *Id*. at 4. The failure of a sentencing court to follow the law of the case as stated by the superior court renders the sentence contrary to law. *State v. Moore*, 8th Dist. Cuyahoga No. 83703, 2004-Ohio- 6303, ¶ 26. It is important to emphasize that the trial court is not a "coordinate court", and therefore it has no power to alter an appellate decision. *See* Black's Law Dictionary 286, 336 (7th ed. 1999). Yet, this is exactly what the trial court has done.

{¶ 39} Further, the trial court disregarded observations in our prior opinion regarding the extreme disparity between the co-defendant Imber's sentence and Beverly's sentence. We noted that "the record established that Imber was equally culpable with Beverly regarding the charged offenses . . . a disparity of over 50 years suggests the appearance of a trial tax . . . ." *Beverly,* 2d Dist. Clark No. 2011 CA 64, 2013-

Ohio-1365, at ¶ 58. The Ohio Supreme Court's decision in *Beverly* echoed our observation of equal culpability of Beverly's co-defendant, noting:

> The record is replete with examples of Beverly and Imber associating together for a common purpose of engaging in a course of conduct. Beverly and Imber drove (and perhaps stole) an Ohio Department of Transportation truck and used it to steal an expensive stump grinder. They used a stolen Chevrolet Caprice in the course of an attempted burglary. And most notoriously, for purposes of this case, they used a stolen truck to commit several burglaries on January 28, 2011. It is clear to us that the record provides ample support for a rational trier of fact to conclude that Beverly and Imber constituted an association-in-fact enterprise and that they engaged in a pattern of corrupt activity. Indeed, we cannot imagine a trier of fact concluding otherwise.

*State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 16.

**{¶ 40}** Although the State argued upon remand that Imber accepted a plea bargain and Beverly faced additional charges, it is important to note that they were jointly indicted for the same charges, except that they each were separately indicted for their respective charges of Having Weapons While Under Disability. I recognize that Beverly did have a single pending indictment for Manufacturing of Drugs, but it was reduced to a felony Possession of Criminal Tools, for which he received a one-year prison sentence. *State v. Beverly,* Clark C.P. No. 10-CR-817A (Sept. 29, 2011). These variations are minor especially where the linchpin of the State's case was that an enterprise existed of which both Imber and Beverly were members and, as we noted, "equally culpable." Although

the State suggests Imber's prior criminal history is unknown, this argument is belied by the original indictment which reflects that Imber was also a convicted felon subject to the Weapon While Under Disability law.

{¶ 41} A disparity of over 36 years remains between Imber and Beverly's terms of imprisonment.  This not only smacks of a trial tax as we suggested previously, but runs afoul of the Ohio Sentencing Commission's emphasis that a sentence be "consistent with sentences for offenders in similar situations."  *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission* (July 1, 1993), at 20.   It has been repeatedly emphasized that, "it will take a courageous judge not to ' * * * stack' every sentence in multiple count cases." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 31 (Lanzinger, J., concurring).

{¶ 42} Furthermore, in my view, Beverly's case as approached by the majority is illustrative of the fact that "appellate review of sentencing is under assault."   *More Than a Formality: The Case for Meaningful Substantive Reasonable Review*, 127 Harv.L.Rev. 951, 951 (2014).   This assault is unjustified and contrary to legislative intent when we look at the legislative history of S.B. 2 and H.B. 86.

{¶ 43} The core language of R.C. 2953.08(G) was enacted by the General Assembly with the passage of S.B. 2, which provided a statutory felony sentencing scheme that explicitly moved away from a trial court's unfettered discretion and provided specific statutory presumptions and guidelines for courts imposing felony sentences. 1995 Am. Sub.S.B. No. 2 (discussed *infra*).   In 2011, the General Assembly passed H.B. 86 in order to revive this sentencing scheme of S.B. 2 verbatim, which was crafted to create a system of clear statutory presumptions, guidelines, and appellate review

designed to "foster proportionality and certainty," avoid disparity, and guide trial court discretion to be wise and not capricious. *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission*, at 14, 19, and 49.

{¶ 44} Given the recent revival of S.B. 2's sentencing scheme which calls for a much stricter adherence to statutory guidelines, presumptions, and mandates, it seems clear that the repudiation of the abuse-of-discretion standard in R.C. 2953.08(G) was intended to establish a clear and convincing review exclusive of the trial court's imposition of a sentence in compliance with the balance of the statutory scheme. Although this statutory standard of review is argued to give more deference to a trial court's decisions, and therefore create a much less rigorous appellate review, R.C. 2953.08(G) in reality should be viewed as part of an overall statutory scheme that was intended by the General Assembly to guide and limit the trial court's discretion in felony sentencing, and create an appellate review that focuses on the trial court's compliance and adherence to the entirety of the statutory scheme. This statutory construction requires the appellate courts to conduct meaningful appellate review to ensure the legislative intent of Ohio's felony sentencing scheme is being properly carried out by sentencing courts in order to achieve the intended consistency and costs control. We are failing to do this in Beverly's case.

{¶ 45} *Marcum* did not change the law in this regard, but instead was a clarification and reinforcement of the General Assembly's intent. "The court must *carefully consider* the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case

itself." (Emphasis added.) *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. Regarding prison terms, this court is empowered to conclude, upon review of all findings, that a particular sentence is clearly and convincingly unsupported by the record, including consideration of the factors set forth in R.C. 2929.11 and 2929.12. *See State v. Withrow*, 2d Dist. Clark No. 2015-CA-24, 2016-Ohio-2884, ¶ 22; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23; *State v. Salyer*, 2d Dist. Champaign No. 2013-CA-60, 2015-Ohio-2431, ¶ 21.

{¶ 46} R.C. 2929.11 provides the "overriding purposes of felony sentencing." R.C. 2929.11(A) indicates that the overriding purposes are "to protect the public from future crime by the offender and others and to punish the offender using the **minimum** sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." (Emphasis added.) In achieving these purposes, the sentencing court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). Division (B) of the statute further provides that "[a felony sentence] shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and **consistent** with sentences imposed for **similar crimes** committed by **similar offenders**." (Emphasis added.) R.C. 2929.11(B). This consistency is lacking in Beverly's 50-year sentence.

{¶ 47} The foundational language for R.C. 2929.11 was originally enacted in 1995 by the General Assembly in Am.Sub.S.B. 2 ("S.B. 2"), which became effective July 1,

1996. S.B. 2 was a comprehensive overhaul of Ohio's sentencing system, and was a result of reforms proposed by the Ohio Sentencing Commission ("Commission") in 1993. *See* R.C. 181.24; *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission* (July 1, 1993). The General Assembly directed the Commission to provide them with a proposal for new law that would achieve the following goals:

(1) **Proportionate sentences**, with increased penalties for offenses based upon the **seriousness of the offense** and the criminal history of the offender;

(2) Procedures for ensuring that the **penalty imposed** for a **criminal offense** upon **similar offenders is uniform in all jurisdictions in the state**;

(3) Retention of **reasonable judicial discretion** within established limits that are consistent with the goals of the overall criminal sentencing structure;

(4) Procedures for matching criminal penalties with the available correctional facilities, programs, and services;

(5) A structure and procedures that control the use and duration of a full range of sentencing options that is consistent with public safety, including, but not limited to, long terms of imprisonment, probation, fines, and other sanctions that do not involve incarceration;

(6) Appropriate reasons for judicial discretion in departing from the general sentencing structure.

(Emphasis added.) R.C. 181.24(B). In response to the General Assembly's directive, the Commission published their formal proposals and recommendations on July 1, 1993. *See A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission* (July 1, 1993). The Report provided a crafted plan to provide "immediate relief for the State's beleaguered prison system" by reducing prison crowding, guiding judicial discretion to provide more certainty and less disparity, and provide a sentencing scheme that allows for "proportionate and fair sentencing that does not overburden State prisons or local budgets." *Id.* at 7. Providing a guide for sentencing courts, the Commission developed a framework of "clearly-stated sentencing purposes and presumptions." *Id.* at 19.

{¶ 48} The Report proposed the language that was adopted by the General Assembly in the "overriding purposes of felony sentencing" found in R.C. 2929.11. *Id.* at 19, 20. Per the Commission's formal recommendations, the sentencing court, in exercising its discretion to determine the best sentence, shall consider the overriding purposes provided in R.C. 2929.11, while not imposing an "unnecessary burden on State or local resources." *Id.* at 19. This "unnecessary burden" provision was not originally enacted in the "overriding purposes" under R.C. 2929.11, and was instead placed in the "sentencing guidelines for various specific offenses and degrees of offenses" under R.C. 2929.13(A). Katz, Martin, Lipton, Giannelli, and Crocker, *Baldwin's Oh. Prac. Crim. L.* § 116:3 (3d Ed. Dec. 2014). In September 2011, the General Assembly made a "bold statement" when it removed the unnecessary burden provision from R.C. 2929.13(A) because it was being ignored and rejected by the courts of appeals, and placed the provision among the "overriding purposes" under R.C. 2929.11. *Id.*; *see* 2011 Am.Sub.

H.B. No. 86 (adding "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources" as an overriding purpose of felony sentencing). Further, with an explicit aim to "keep the focus on the harm caused to the victim or society," the sentencing judge must consider the "key principles" of ensuring the sentence relates to the seriousness of the offender's conduct and the impact on the victim, as well as ensuring that the sentence is "consistent with sentences for offenders in similar situations." *A Plan for Felony Sentencing in Ohio: A Formal Report of the Ohio Criminal Sentencing Commission* (July 1, 1993), at 19, 20.

{¶ 49} After considering these overriding purposes and principles, "the judge should weigh statutory factors concerning the seriousness of the offense and the likelihood that the offender will return to crime." *Id*. at 19. To aid in guiding a sentencing court's proper discretion, the Report further provided specific factors a judge is to consider concerning the seriousness of the offender's *conduct* and the offender's likelihood of recidivism. *Id*. These specific factors were adopted by the General Assembly, and are now enumerated in R.C. 2929.12. These factors are intended to aid judicial discretion in accomplishing the specified presumptions and principles established by the Commission's new framework. *Id*.

{¶ 50} Specifically regarding the imposition of non-minimum sentences, the R.C. 2929.12 factors aid in accomplishing the principle set forth by the Commission that maximum prison terms should be imposed "only for the most serious forms of the offense, for offenders who pose the greatest likelihood of committing future crimes, for major drug offenders, and for certain repeat violent offenders [to whom mandatory prison terms

apply].” *Id.* at 28.

{¶ 51} The Commission concluded that, “in the interest of proportionality and assuring adequate prison space for high-level offenders,” enhancements for repeat property offenders “artificially increase the seriousness of certain offenses.” *Id.* at 33.

{¶ 52} R.C. 2929.12(B) provides the factors which “indicat[e] that the offender's *conduct* is more serious than *conduct* normally constituting the offense.” (Emphasis added.)   The factors are stated as follows:

(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

(6) The offender's relationship with the victim facilitated the offense.

(7) The offender committed the offense for hire or as a part of an organized criminal activity.

(8) In committing the offense, the offender was motivated by prejudice

based on race, ethnic background, gender, sexual orientation, or religion.

(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.

*Id.* Of these aforementioned factors, only the economic harm portion of R.C. 2929.12(B)(2) applies to Beverly, as no person was physically injured, and no evidence was presented of serious psychological injury. Subsection (C) provides mitigating factors that indicate that the offender's conduct is less serious than conduct normally constituting the offense:

(1) The victim induced or facilitated the offense.

(2) In committing the offense, the offender acted under strong provocation.

(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.

As to these factors, the record establishes that Beverly and his co-defendant Imber did not cause or expect to cause any physical harm to a person.

{¶ 53} Taking this legislative history into account, we should acknowledge that although "[t]here is no grid under Ohio law under which identical sentences must be

imposed for various classifications of offenders", a sentence must not be "so unusual as to be outside the mainstream of local judicial practice." *State v. Turner,* 8th Dist. Cuyahoga No. 81449, 2003-Ohio-4933, ¶ 39, quoting *State v. Ryan*, 1st Dist. Hamilton No. C-020283, 2003-Ohio-1188, ¶ 10. " 'Proportionality is one of the overriding principles of felony sentencing under R.C. 2929.11.' " *State v. Richards*, 3d Dist. Union No. 14-15-27, 2016-Ohio-1293, ¶ 7, quoting *State v. Lewis*, 11th Dist. Lake No.2011-L-004, 2011-Ohio-4700, ¶ 25. This 50-year sentence is not only outside the mainstream of local judicial practice, but is a true outlier for which there must be a systemic remedy. The attached chart ("Appendix 1") illustrates that Beverly's sentence, in light of the mandated mergers and statutory reduction of the maximum sentence for third-degree felonies, was actually increased on remand. Given the statutory change and mergers, the sentence on remand would have been subject to a maximum of 44 ½ years if the trial court had ordered the same counts to run consecutively in part and concurrently in part as was done for Beverly's original sentence. Even a 44 ½ year sentence would run afoul of our prior opinion, wherein we concluded these crimes are not the most serious and Beverly is not the most depraved offender. Nevertheless, on remand the trial court ordered all of Beverly's sentences to run consecutively to each other for an aggregate 50 year prison sentence.

{¶ 54} Accordingly, I am firmly convinced that the record fails to establish that an aggregate sentence of 50 years is necessary to protect the public from future crime by Beverly. I am also firmly convinced that the record does not support a finding that the harm caused by two or more of his multiple offenses is so great or unusual that all consecutive terms are warranted. This aggregate term is once again unduly harsh and

lacks evidentiary support.

**{¶ 55}** It is impossible to fathom how a sentence of half the length would not achieve the legislature's intent and adequately protect the public as well as punish Beverly. I clearly and convincingly find the record fails to support a 50 year term. On the authority contained in Section 3(B)(2), Article IV of the Ohio Constitution and R.C. 2953.08(G)(2)(a)(b), I would reverse and modify Beverly's sentence as follows: all Counts to run concurrently with one another, with the exception of Count 1 and Count 21, which must run consecutively to any other sentence, for an aggregate sentence of 16 years. Accordingly, I urge the Supreme Court to accept review of this case.

. . . . . . . . . .

## APPENDIX 1

|  | Original Sentencing | Remand Sentencing |
|---|---|---|
| Count 1: Engaging in a Pattern of Corrupt Activity (F1) | 10 years | 10 years |
| Count 2: Receiving Stolen Property (F4) | 18 months | 12 months |
| Count 3: Receiving Stolen Property (F5) | 12 months | 12 months |
| Count 5: Receiving Stolen Property (F4) | 18 months | 18 months |
| Count 9: Attempted Burglary (F3) | 5 years | 3 years* |
| Count 10: Burglary (F3) | 5 years | 3 years* |
| Count 11: Receiving Stolen Property (F4) | 18 months | 12 months |
| Count 12: Burglary (F3) | 5 years | 3 years* |
| Count 13: Burglary (F3) | 5 years | 3 years* |
| Count 14: Burglary (F3) | 5 years | 3 years* |
| Count 15: Burglary (F3) | 5 years | 3 years* |
| Count 16: Receiving Stolen Property (F4) | 18 months | 12 months |

| | | |
|---|---|---|
| Count 17: Receiving Stolen Property (F4) | 18 months | (merged with Count 18) |
| Count 18: Having Weapons While Under Disability (F3) | 5 years | 3 years* |
| Count 20: Fleeing and Eluding (F3) | (merged with Count 21) | (merged with Count 21) |
| Count 21: Fleeing and Eluding (F3) | 5 years | 3 years* |
| Count 22: Attempted Burglary (F4) | 18 months | 18 months |
| Count 23: Burglary (F3) | 5 years | 3 years* |
| Count 24: Burglary (F3) | 5 years | 3 years* |
| Count 25: Burglary (F3) | 5 years | 3 years* |

**\*** These terms were reduced by operation of statutory change

Copies mailed to:

Megan M. Farley
Michael R. Pentecost
Hon. Douglas M. Rastatter